UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

       Plaintiff,                  CASE NO. 2:23-cr-20583

                                    Hon. Jonathan J.C. Grey

v.

Martin Blas-Hernandez,

       Defendant.

---

## United States's Sentencing Memorandum

---

NOW COMES the United States by and through Counsel with its sentencing memorandum, in connection with the sentencing of defendant, Martin Blas-Hernandez, which hearing is scheduled for Wednesday, November 26, 2025, at 11:00 a.m.

**United States's Memorandum in Support**

I.  **Background**

On September 27, 2023, a tractor trailer containing a shipment of plastic bags applied for admission into the United States from Mexico through the World Trade Bridge, Port of Entry (POE) in Laredo, TX. *See* 2025 Presentence Investigation Report ("PSR") at ¶ 11. During the secondary inspection of the trailer "a bundle containing a white powdery substance that tested positive for the properties of cocaine" was discovery. *Id.* at ¶ 12. The trailer was continuously surveilled by law enforcement from Texas to a warehouse in Wixom, Michigan. *See id.* at ¶ 14. On October 1, 2023, the defendant, Blas-Hernandez, along with his two co-defendants, arrived at the Wixom warehouse after traveling from the state of Indiana. Thereafter, the co-defendants transferred "223 bricks of cocaine, each weighing one kilogram" from the bed of the trailer to the warehouse. *Id.* at ¶ 19. Federal agents subsequently learned that Blas-Hernandez is not a United States citizen; "he first immigrat[ed] to the United States in 2021," *id.* at ¶ 44, and "[f]ollowing any custodial sentence, the defendant will likely be deported to Mexico." *Id.*

## II. Argument

*A. Nature and Circumstances of the offense characteristics of the defendant.*

The nature and circumstances of Blas-Hernandez's offense are extremely serious. Cocaine trafficking in Michigan is of particular concern, with major operations run by large-scale Mexican Drug Trafficking Organizations (DTOs), particularly the Sinaloa and Jalisco New Generation Cartels. Detroit serves as a primary distribution hub, with illicit drugs entering the state via various routes and transport methods. Most cocaine is transported into Michigan from the U.S. Southwest Border states (like Arizona, California, and Texas) and Chicago. Major interstates such as I-75, I-94, and I-69 are key trafficking corridors. Couriers often use private and commercial vehicles, sometimes equipped with sophisticated hidden compartments, or use mail/parcel services to evade detection. In the instant matter, a far more sophisticated method than hidden compartments ("traps") within an automobile was utilized – "Blas-Martinez . . . stated that he was the lessee of . . . the warehouse where the cocaine was delivered." *Id.* at ¶ 14. The leasing of a warehouse is indicative of a DTO engaged in long-term planning and consistent distribution within the Eastern District of Michigan.



Detroit is the largest drug market in the eastern part of the state, functioning as a primary distribution center.

Additionally, the shared border with Canada, connected by the Ambassador Bridge and the Detroit-Windsor Tunnel, is a crucial transit point. Cocaine and bulk currency (proceeds from drug sales in the U.S.) are often transported through Detroit into Canada.

5



Mexican DTOs are the main suppliers of wholesale quantities of cocaine, coordinating with street gangs, criminal groups, and independent dealers for local distribution. For instance, in fiscal year 2025, U.S. Customs and Border Protection Field Operations seized more than 1,500 pounds of cocaine at Michigan ports of entry, including a single 339-pound seizure in Detroit in April 2025.

6

*To reflect the seriousness of the offense, promote respect for the law, and provide just punishment.*

The gravity of this international drug trafficking conspiracy, involving cocaine quantities of this enormity, is self-evident. The statutory maximum of life, as well as the applicable guidelines range of 37 months to 46 months, reinforces this understanding. A custodial sentence at the bottom of the guidelines range would reflect the seriousness of the offense, promote respect for the law, and provide a just punishment.

B.  *Adequate Deterrence.*

Owing to the defendant's undocumented legal status, he is likely to be removed from the country following his custodial sentence. Considering the lack of the defendant's physical presence within the United States, the potential of future criminal conduct is greatly reduced.

7

### III.   Conclusion

For the reasons identified above, the government recommends a custodial sentence, and the author has not been authorized to recommend a downward variance. The government, however, will note that Blas-Hernandez is a less-culpable defendant than his co-defendant son, Blas-Martinez, who was committed to the custody of the Federal Bureau of Prisons for a term of 48-months.

Respectfully submitted,

JEROME F. GORGON, JR.
United States Attorney

s/ *C. Barrington Wilkins*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone: (313) 226-9621
E-Mail: barrington.wilkins@usdoj.gov

Dated: Monday, November 24, 2025

**Certificate of Service**

I certify that on Monday, November 24, 2025, I electronically filed the foregoing Response and Brief in Support with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Mr. Juan A. Mateo, Jr., *Esq.*

s/ *C. Barrington Wilkins*
C. Barrington Wilkins
Assistant U.S. Attorney
United States Attorney's Office
